DSS:SDD
F.#2012R00799

**12 M 480**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOSEPH DEBOSE,

    Defendant.

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., §§
922(a)(1)(A) and 2; T. 22,
U.S.C., § 2778(b)(2) and
(c); T. 22, C.F.R., §§ 120
et seq.)

- - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

    JACOB T. BERRICK, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly appointed according to law and acting as such.

### Unlicensed Dealing in Firearms

    Upon information and belief, on or about and between December 2010 and April 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH DEBOSE, together with others, not being a licensed importer, licensed manufacturer or licensed dealer of firearms, did knowingly and willfully engage in the business of dealing in firearms.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), 2 and 3551 et seq.)

## Illegal Export of Firearms

Upon information and belief, on or about and between December 2010 and April 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH DEBOSE, together with others, did knowingly and willfully export from the United States to China a Beretta 9mm semiautomatic handgun and other firearms, which defense articles were listed on the United States Munitions List, without first obtaining the required license or written approval from the State Department.

(Title 22, United States Code, Sections 2778(b)(2) and 2778(c); Title 22, Code of Federal Regulations, Parts 121 and 127; Title 18, United States Code, Sections 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

    1. I am currently a Special Agent with ATF, and have served in this capacity since April 2008. I am currently assigned to the ATF Joint Firearms Task Force, where I work with,

---

[1]/ Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth every fact learned during the course of this investigation.

2

among others, the Counter-Proliferation Investigations group of the Department of Homeland Security, Homeland Security Investigations ("HSI"). My duties include the investigation and enforcement of federal laws involving illegal gun trafficking and the export of U.S.-origin commodities, including firearms.

2.   As a Special Agent of ATF, I have received advanced training in firearms-trafficking investigations at the Federal Law Enforcement Training Center. In addition, I have conducted and participated in several investigations involving the unlicensed export of U.S. commodities, including firearms.

3.   Through my training, education, and experience - which has included (I) reviewing financial records; (ii) conducting surveillance of individuals engaged in the violation of federal law; and (iii) executing search warrants on suspect premises - I have become familiar with the manner in which firearms are illegally trafficked, including when they are unlawfully exported from the United States to foreign countries, directly or indirectly, to avoid both licensing requirements and detection by law enforcement.

4.   I have personally participated in this investigation and have witnessed some of the facts and circumstances described herein. In addition, I have received information from other federal law enforcement officials,

3

including foreign law enforcement officials. I also have reviewed documents obtained during the course of the investigation. The statements contained in this affidavit are based on my own observations as well as the review of documents and reliable information provided to me by other law enforcement personnel.

## Introduction

5. This affidavit is submitted in support of a criminal complaint charging that the defendant JOSEPH DEBOSE violated 18 U.S.C. § 922(a)(1)(A) and 22 U.S.C. § 2778© by unlawfully dealing in firearms, and exporting firearms from the United States to China without first obtaining the necessary export licenses.

6. Pursuant to Title 22, United States Code, Section 2778(b)(2), defense articles designated by the President of the United States on the United States Munitions List ("USML") may not be exported without a license from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"). In addition, pursuant to Title 22, Code of Federal Regulations, Section 120, et seq., the DDTC is responsible for the administration of the International Traffic in Arms Regulations ("ITAR") as they relate to the manufacture, brokering, import, export, and transfer of defense articles and

4

defense services. Title 22, United States Code, Section 2778(c) provides criminal penalties for willful violations of Section 2778.

7. Category I of the USML expressly applies to "Firearms, Close Assault Weapons and Combat Shotguns." See 22 C.F.R. § 121.1 (pertaining to "Nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)"). Section 123.1 of the Code of Federal Regulations provides that "Any person who intends to export . . . a defense article must obtain the approval of the [DDTC] prior to the export or temporary import, unless the export or temporary import qualifies for an exemption under the provisions of this subchapter." 22 C.F.R. 123.1(a).

8. In addition, Title 18, United States Code, Section 922(a)(1)(A) prohibits dealing in firearms without first obtaining a Federal Firearms License from the ATF.

Factual Allegations

9. In connection with this investigation, on or about August 30, 2011, a representative of United Parcel Service ("UPS") contacted law enforcement to inform them that a parcel (the "Parcel") shipped from Queens, New York had been intercepted by Chinese law enforcement officials in Shanghai, China, and found to contain several firearms, including a Beretta 9mm semiautomatic handgun concealed in a speaker housing. UPS also

5

provided law enforcement with the name of the shipping company in Queens that had accepted the Parcel, copies of the waybill, and other information related to the seizure.

10. On or about November 7, 2011, Chinese law enforcement officials provided HSI with information concerning approximately nine firearms discovered in the Parcel, including certain serial numbers that had been partially obliterated from the firearms. I subsequently traveled to Shanghai, China, and personally examined a number of firearms in the custody of the anti-smuggling unit of the Shanghai Police Service, which had been removed from the Parcel.

12. After examining the firearms, agents determined that although the serial number on a particular Beretta 9mm handgun (the "Beretta") had been obliterated, it was still readable after restoration techniques had been applied, with the aid of a microscope. A records check conducted by the ATF revealed that a Beretta 9mm handgun with that serial number had originally been purchased in or about July 2011 in North Carolina. The State Department has issued a license determination indicating that the Beretta was a designated defense article, as defined in Category I(a) of the USML, at the time of the conduct charged in this complaint. Accordingly, the

6

shipment of this item out of the United States required the issuance of a license from the State Department prior to export.

13. In addition, agents visited the shipping company in Queens from which the Parcel originally had been sent. Surveillance footage obtained from the shipping company shows two men dropping off the parcel on August 22, 2011. One of these individuals ("CS1") subsequently agreed to provide information to law enforcement.[2] I have interviewed CS1, who has provided reliable information about the source of the firearms that were shipped to China from Queens, New York.

14. The waybill for the August 22, 2011 shipment indicated that the Parcel contained a "speaker for gift."[3] In addition, the UPS waybill contained an express notice provision, stating: "I hereby certify that the information on this invoice is true and correct and the contents and value of this shipment is as stated above." The waybill further stated, "These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited."

---

[2] CS1 has pleaded guilty to federal charges stemming from CS1's role, and is cooperating in the hope of receiving a reduction in sentence.

[3] During my trip to Shanghai, Chinese officials also showed me x-rays and photographs of the speaker housing that was used to secrete the firearms within the Parcel.

15. During debriefings, CS1 informed me that he had assisted others in packing several firearms, concealed in a speaker housing, which he and others had shipped from Queens to China on or about August 22, 2011 in the Parcel. In addition, CS1 looked at a photograph of the firearms recovered from the Parcel in China by Chinese law enforcement officials, and stated that they were the guns he had secreted in the Parcel.

16. In addition, CS1 stated to me, in sum and substance and in part, that the guns in the August 22, 2011 shipment were obtained from the defendant JOSEPH DEBOSE in North Carolina. CS1 stated that the defendant had sold firearms to CS1 and others on several occasions beginning in the Spring of 2011. Moreover, CS1 positively identified a photograph of the defendant JOSEPH DEBOSE out of a photo array of similar-looking individuals. CS1 referred to the defendant as "the guy from North Carolina" and "the pretty boy."

17. During this investigation, agents also have extensively debriefed another confidential source ("CS2") regarding the defendant's criminal conduct. CS2, who has provided information that has proven reliable, has stated to agents, in sum and substance and in part, that the defendant JOSEPH DEBOSE began dealing firearms for resale in or about December 2010. Between December 2010 and April 2012, the

8

defendant provided firearms to CS2 and others on multiple occasions. During the course of their firearms trafficking activity, the CS2 and DEBOSE discussed the fact that the firearms DEBOSE provided were sent to China.

18. CS2 also indicated that the defendant JOSEPH DEBOSE provided instructions as to how to remove the serial numbers from firearms they were trafficking, in order to make it more difficult for law enforcement authorities to trace the guns. CS2's information has been largely corroborated by other information and evidence that I have obtained and reviewed during the investigation.

19. Based on information provided by CS1 and CS2 on numerous occasions, the defendant JOSEPH DEBOSE sold them firearms, including semiautomatic pistols, revolvers, rifles, shotguns and military-style assault weapons, such as the Armalite M-15 assault rifle, knowing that the guns were being shipped to customers in China. Moreover, following the seizure of the August 22, 2011 Parcel by law enforcement authorities in Shanghai, phone records show contact between the defendant JOSEPH DEBOSE and one of the individuals who shipped the Parcel from Queens. Shortly following this phone call, the defendant JOSEPH DEBOSE called the Harnett County Sheriff's Office in North Carolina and reported that several firearms had been stolen from

9

his garage. The firearms that the defendant reported stolen match the description of the firearms I examined in China, including the Beretta 9mm semiautomatic pistol that I traced to a purchaser in North Carolina.

20. During the investigation, I have also obtained copies of consensual recorded telephone calls and text messages in which the defendant JOSEPH DEBOSE discussed providing guns to customers in China. For example, on May 2, 2012, in a recorded telephone call, the defendant indicated that he would soon have additional firearms available to be shipped to China. In addition, on May 11, 2012, the defendant again discussed obtaining firearms for customers in China. Moreover, also on May 11, 2012, the defendant sent a text message in which he stated: "So far I have 2 CZ 527, 4 Glock 19s, 1 M4, and 2 wood Rem. 870's. This week I will get two P22 and a tactical shotgun. Is there anything else you need?" Based on my training and experience, I know that the items to which the defendant referred are all types of firearms. For example, an "M4" is a variant of the U.S. military standard issue combat rifle. Moreover, I personally examined a CZ 527 rifle, as well as several Glock 19 and P22 semiautomatic pistols, that were among the firearms seized in the August 22, 2011 shipment to China.

21. A search of ATF records indicates that the defendant JOSEPH DEBOSE does not possess a Federal Firearms License. In addition, I have been advised that, based on a search of DDTC records, neither the defendant nor any of the other individuals involved in this scheme had obtained a license from the State Department to export firearms from the United States.

### REQUEST TO SEAL

22. Because the information contained in this affidavit relates to an ongoing investigation, the government respectfully requests that this affidavit be filed under seal until the defendant is arrested.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued, and that the defendant JOSEPH DEBOSE be dealt with according to law.

---
JACOB T. BERRICK
Special Agent, ATF

Sworn to before me this
May 17, 2012